# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-112 |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD MILLER; MAGISTRATE JOSEPH DEMARCHIS; A.G. SHECHAN BALCHON; CITY OF MONESSEN; MONESSEN POLICE DEPARTMENT; KATHLEEN KANE; POLICE CHIEF OF MONESSEN; and MAYOR OF MONESSEN, | ) ) ) ) ) ) ) | Magistrate Judge Lisa Pupo Lenihan  ECF Nos. 12, 32, 49 |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION
**LENIHAN, M.J.**

Presently before the Court are the Motions to Dismiss filed by Defendant Joseph DeMarchis (ECF No. 12), Defendants Shechan Balchon, Kathleen Kane, and Richard Miller (ECF No. 32), and Defendants City of Monessen, Monessen Police Department, Police Chief of Monessen, and Mayor of Monessen (ECF No. 49). For the reasons discussed below, the Motions will be granted as to all claims.

AVERMENTS

Plaintiff, James Perry ("Plaintiff") alleges that on February 24, 2011, he was pulled over by Monessen police. (ECF No. 3 at 6.) The police approached his driver's side window. When Plaintiff rolled down the window, one of the officers put a gun to the back of his head. Plaintiff was told by the officers that he was being detained. Thereafter, the officers threw Plaintiff to the ground, and one of the officers put his foot on Plaintiff's neck as the officers placed him in

handcuffs. (ECF No. 3 at 6.) Plaintiff was then thrown into the back seat of a police car. (ECF No. 3 at 6.) Plaintiff admits that at some point, the officers "found a few keys and a few bags of herion [sic]" on his person. (ECF No. 3 at 10.) He was taken to the Monessen Police Station where he was immediately strip searched. (ECF No. 3 at 6-7.) Plaintiff was placed into a holding cell. (ECF No. 3 at 7.)

Thereafter, Plaintiff was brought into a room by Defendant Richard Miller ("Defendant Miller) an agent with the Pennsylvania Attorney General, and another agent named Andy Toffman.[1] (ECF No. 3 at 7, 10.) Defendant Miller indicated that he believed that one of the keys found on Plaintiff's person unlocked the safe in Kimberly Kibelbek's[2] home. Plaintiff told the agents that he did not know what the key belonged to, and that Ms. Kibelbek told Plaintiff to hold the key for her in case she lost hers. (ECF No. 3 at 10.) Agent Toffman told Plaintiff that if Kibelbek indicates that certain drugs belong to her, then the agents would let the Plaintiff go. Plaintiff told the agents that they should just let him go because he had nothing to do with what Kibelbek has in her home. (ECF No. 3 at 10.) Defendant Miller asked Plaintiff if he would "set up" a known Pittsburgh drug dealer. Plaintiff was told to go home and think about it. (ECF No. 3 at 10.)

Two weeks later, Plaintiff still had not contacted the agents concerning Defendant Miller's request to set up a known drug dealer. Plaintiff received a call from Agent Toffman while Plaintiff and his wife were shopping. Agent Toffman asked Plaintiff what he planned to do in reference to the request to set up the drug dealer. Plaintiff was concerned for his family's safety. He told Agent Toffman that Plaintiff would call him back in 10 minutes. Plaintiff then rushed over to his attorney's office and asked his attorney, Neil Marcus, if he would call Agent

---

[1] Agent Toffman is not a named Defendant.
[2] Kimberly Ann Kibelbek is listed as a joined co-defendant on Plaintiff's criminal docket sheet in the Court of Common Pleas of Westmoreland County at CP-65-CR-0003361-2011, and CP-65-CR-0003372-2011.

2

Toffman and tell him not to call Plaintiff again. (ECF No. 3 at 10-11.) At that time, Plaintiff's attorney did inform Agent Toffman not to contact Plaintiff directly again. (ECF No. 3 at 11.)

Plaintiff avers that the following retaliation then occurred:

1) The officers attempted to set up a drug deal with a female that Plaintiff once knew. The drug deal never occurred;

2) Plaintiff was again hassled and followed;

3) Officers followed Plaintiff to Ms Kibelbek's hotel in New Stanton. As Plaintiff was attempting to leave Kibelbek's hotel room, Plaintiff was again stopped by Defendant Miller and his men, with their guns pointed at him. Plaintiff was ordered to exit his vehicle. Plaintiff was arrested, handcuffed and placed into the back of a police vehicle. Plaintiff was then booked into the Westmoreland County Prison;

4) Plaintiff's wife told him that she had been threatened that if she put up Plaintiff's bond, she would be arrested;

5) Plaintiff avers that even though he made bail, "they tried to stop me from making it."

(ECF No. 3 at 11.)

Plaintiff states that he was arrested on drug charges only because he refused to set up someone on a drug deal, that he has been sitting in jail for 2 (two) years, and "they refuse to bring [his] case to trial," all in violation of his due process rights.[3] (ECF No. 3 at 11-12.)

---

[3] Plaintiff's criminal dockets sheets in the Court of Common Pleas of Westmoreland County reflect that Plaintiff's criminal charges are currently pending and that since late 2011 through late 2015, Plaintiff's attorney, Neil Marcus, has filed numerous motions for continuance. In addition, the docket sheets reflect that the criminal case went to trial and that on April 10, 2015, the Court declared a mistrial because of a hung jury. *See* Criminal Docket Sheets, Court

3

Plaintiff alleges that his First, Fourth, Fifth, and Fourteenth Amendment rights were violated. (ECF No. 3 at 6.) Plaintiff further avers that the City of Monessen failed to train and implement policies, and that this failure led to a practice of inadequate police investigation. (ECF No. 3 at 12.) Plaintiff also alleges that the City failed to discipline its officers who were charged with police misconducts. These failures, according to Plaintiff, created an atmosphere wherein Plaintiff's arrest was allowed to occur. That is, this atmosphere permitted the Monessen Police to stop, detain, and subject Plaintiff to questioning by the agents of the Attorney General's office. (ECF No. 3 at 12.) In this way, Plaintiff avers that his Fourth Amendment rights were violated. (ECF No. 3 at 12.)

Plaintiff's criminal docket sheets in the Court of Common Pleas of Westmoreland County indicate that the dates of the criminal complaints are July 21, 2011[4] and August 9, 2011[5].

Plaintiff seeks dismissal of all criminal charges and 5 (five) million dollars.[6] (ECF No. 3 at 7.)

LEGAL STANDARDS

Recently, the United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward

---

of Common Pleas of Westmoreland County, *Commonwealth v. Perry*, CP-65-CR-0003372-2011 & CP-65-CR-0003361-2011, https://ujsportal.pacourts.us/DocketSheets/CP.aspx.
[4] CP-65-CR-0003372-2011.
[5] CP-65-CR-0003361-2011.
[6] Plaintiff delivered his civil complaint in the above captioned case to the Clerk of Court on January 27, 2015. That same day, Plaintiff also delivered to the Clerk of Court another complaint at Civil Action No. 15-113 arising out of these same facts, and including almost all of the same Defendants. Civil Action No. 15-113 may be a manifestation of Plaintiff's intent to amend his Complaint at Civil Action No. 15-112. Whatever the reason for the duplicative filings, both civil actions are time barred with the exception of Plaintiff's malicious prosecution claim in Civil Action No. 15-113.

> with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3d Cir. 1990)). A court may also consider indisputably authentic documents. *Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *Golden v. Cook,* 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

Finally, the Court must liberally construe the factual allegations of the Complaint because pleadings filed by pro se plaintiffs are held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Therefore, if the Court "can

5

reasonably read [the] pleadings to state a valid claim on which [Plaintiff] could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or [Plaintiff's] unfamiliarity with pleading requirements." *Wilberger v. Ziegler*, No. 08-54, 2009 WL 734728 at *3 (W.D. Pa. March 19, 2009) (citing *Boag v. MacDougall,* 454 U.S. 364 (1982) (*per curiam*)).

ANALYSIS

Defendant Magisterial District Judge Joseph R. DeMarchis ("DeMarchis") argues the following in support of his Motion to Dismiss (ECF No. 12): 1) DeMarchis did not preside over the criminal hearings following the incidents alleged in the Complaint as evidenced by the criminal docket sheets for the Court of Common Pleas of Westmoreland County; 2) Plaintiff does not mention DeMarchis at any point in his Complaint, other than in the caption of the case; 3) DeMarchis is protected by Eleventh Amendment immunity for claims against him in his official capacity, and absolute judicial immunity for claims against him in his individual capacity; and 4) Plaintiff's request for injunctive relief—that DeMarchis dismiss the criminal charges against him—must be brought in the form of habeas corpus relief.

Defendants Miller, Shechan Balchon ("Balchon"), and Kathleen Kane ("Kane") argue the following in support of their Motion to Dismiss (ECF No. 32): 1) Plaintiff's Complaint is barred in its entirety by the statute of limitations; 2) Plaintiff's Complaint is barred in its entirety by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994); 3) Defendant Kane lacks any personal involvement in the alleged wrongs; 4) Defendant Balchon is protected by the doctrine of prosecutorial immunity; and 5) any claims against Defendants Miller, Kane, and Balchon in their official capacities are barred by the Eleventh Amendment.

6

Defendants City of Monessen, Monessen Police Department, Police Chief of Monessen, and Mayor of Monessen argue the following in support of their Motion to Dismiss (ECF No. 49): 1) all claims are barred by the statute of limitations; 2) Plaintiff has failed to state a *Monell* claim pursuant to a failure to train theory; 3) Plaintiff has failed to state claims against the Police Chief of Monessen or the Mayor of Monessen in their individual capacities; and 4) Plaintiff has failed to state a claim against the Monessen Police Department because it is a subunit of the local government.

Despite this Court's Orders at ECF Nos. 14, 38, 45, and 51, Plaintiff has filed no responsive briefs.

Defendants raise many meritorious arguments. The Court need not undertake an analysis of these arguments, however, where it is clear from the face of the Complaint that the entire civil action is time barred. Generally, a limitations defense may not be raised by motion, but must be raised in the answer. *See* Fed. R. Civ. P. 8(c) & 12(b); *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002). "While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver*, 38 F.3d at 1384 n.1. (citing *Trevino v. Union Pacific Railroad Co.*, 916 F.2d 1230 (7th Cir. 1990); 5A Wright and Miller, *Federal Practice and Procedure; Civil 2d*, § 1357). Here, the allegations of Plaintiff's Complaint are premised upon events that occurred in 2011.

Congress has not established a time limitation for a § 1983 cause of action. *Wilson v. Garcia*, 471 U.S. 261, 266 (1985), *superseded by statute as recognized in, Kasteleba v. Judge*, 325 F. App'x 153, 156 (3d Cir. 2009). The United States Supreme Court has indicated, however,

that courts are to consider § 1983 actions as tort actions and borrow the statute of limitations for state tort causes of action. *Wilson*, 471 U.S. at 278. In Pennsylvania, the statute of limitations for tort actions is two years. 42 Pa. Con. Stat. Ann. § 5524. Therefore, for § 1983 actions brought in Pennsylvania federal courts, the appropriate limitations period is two years. *See Smith v. City of Pittsburgh*, 764 F.2d 188, 194 (3d Cir. 1985).

Federal law, however, governs when a § 1983 cause of action accrues; that is, when the statute of limitations begins to run. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, "'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'" *Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998) (quoting *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)). "The cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace*, 549 U.S. at 391 (citations omitted).

Here, affording Plaintiff the most liberal construction of his pro se Complaint, Plaintiff appears to allege the following claims: 1) Fourth Amendment false imprisonment relating to his initial detention in February 2011, when officers found heroin and keys on his person; 2) First Amendment retaliation in that he was arrested later in 2011 because he refused to cooperate with agents in the Attorney General's office to set up a known drug dealer; and 3) Fourth Amendment false arrest and false imprisonment when he was arrested later in 2011.

A liberal reading of the pro se Complaint reveals that all of Plaintiff's claims are barred by the two-year statute of limitations for § 1983 claims.

First, the Court turns to Plaintiff's false imprisonment claim. A false imprisonment claim is defined as detention without legal process. *Wallace*, 549 U.S. at 389. Plaintiff alleges that on February 24, 2011, Plaintiff was detained by police solely for the purpose of coercing Plaintiff to

cooperate in another ongoing drug investigation. (ECF No. 9 at 3-4.) The United States Supreme Court has noted that the claim of false imprisonment is governed by a "distinct" accrual rule because a victim who is wrongfully detained may not be able to bring suit until after the imprisonment without legal process ends. *Wallace*, 549 U.S. at 389 (Every confinement is an imprisonment, whether it is in a prison, or by forcibly detaining a person in a public street, or in one's home.). Therefore, a claim for false imprisonment accrues when the alleged false imprisonment ends. *Id.* The *Wallace* Court noted that the tort of false imprisonment ends "once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* (citations omitted) (emphasis in original).[7] Here, Plaintiff was preliminarily arraigned on July 21, 2011, and August 10, 2011. (*See* Criminal Docket Sheets, Court of Common Pleas of Westmoreland County, *Commonwealth v. Perry*, CP-65-CR-0003372-2011 (cross referencing Originating Docket No. MJ-10103-CR-0000289-2011), & CP-65-CR-0003361-2011 (cross referencing Originating Docket No. MJ-10103-CR-0000312-2011), https://ujsportal.pacourts.us/DocketSheets/CP.aspx. Therefore, Plaintiff's cause of action for false imprisonment accrued at that time. Plaintiff's Complaint was not delivered to the Clerk of Court until January 2015, well after the expiration of the two-year statute of limitations.[8] The false imprisonment claim is clearly time barred.

Next, the Court examines Plaintiff's claim of false arrest claim. As noted by the United States Supreme Court, "[t]here can be no dispute that [a plaintiff can file] suit as soon as the allegedly wrongful arrest occur[s], subjecting him to the harm of involuntary detention, so the

---

[7] The *Wallace* Court further noted that once legal process is instituted, the cause of action becomes one of malicious prosecution for the wrongful institution of the legal process. *Wallace*, 549 U.S. at 390.
[8] The Court refers to the date that the original Complaint was delivered to the Clerk of Court rather than the date of filing because where a pro so plaintiff submits a complaint along with a request to proceed in forma pauperis, the complaint is deemed to be constructively filed as of the date it is received by the clerk. *McDowell v. Delaware State Police*, 88 F.3d 188, 191 (3d Cir. 1996).

9

statute of limitations would normally commence to run from that date." *Wallace*, 549 U.S. at 388.  Here, the criminal docket sheets reflect that Plaintiff was arrested on July 21, 2011, and August 9, 2011.  (*See* Criminal Docket Sheets, Court of Common Pleas of Westmoreland County, *Commonwealth v. Perry*, CP-65-CR-0003372-2011 & CP-65-CR-0003361-2011, https://ujsportal.pacourts.us/DocketSheets/CP.aspx.)  Therefore, the false arrest claim is time barred because Plaintiff's Complaint was not received by the Clerk of Court until January 2015, well after the expiration of the two-year statute of limitations.

Plaintiff alleges retaliatory actions by the Defendants, all culminating in his arrest on July 21, 2011, and August 9, 2011.  That is, Plaintiff alleges that he was arrested on drug charges only because he refused to cooperate with agents who were working on another drug investigation.  Taking all of Plaintiff's allegations as true and affording him every favorable inference, all of Defendants' alleged retaliatory acts resulted in injury to Plaintiff upon his arrest.  Therefore, Plaintiff's cause of action for retaliation would have accrued on July 21, 2011 and August 9, 2011, the dates of his arrest.  These claims too, are obviously time barred.

Plaintiff's entire civil action is barred by the statute of limitations and must be dismissed with prejudice.[9]  Defendants' Motions to Dismiss will be granted.

An appropriate Order will follow.

Dated: February 8, 2016                                BY THE COURT:

_____
LISA PUPO LENIHAN
United States Magistrate Judge

---

[9] After carefully considering Plaintiff's pro se averments, the Court cannot find the bases for Plaintiff's alleged Fifth and Fourteenth Amendment violations.

10

cc: All counsel of record
Via electronic filing

James Perry
3495-13
3000 S. Grande Blvd.
Greensburg, PA  15601